UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

CASE NO: 4:24-cv-19

ALTON WALL SR.,

    Plaintiff,

v.

ORANGE COUNTY,

    Defendant.

**COMPLAINT**

**(Jury Trial Demanded)**

## INTRODUCTION

1. This is an action for disability discrimination and retaliation under the Americans With Disabilities Act ("ADA"), the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101 et seq., Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000 et seq, for punitive damages and for attorney fees pursuant to 42 U.S.C. § 1988. In addition, Plaintiff was wrongfully terminated in violation of the public policy of North Carolina Plaintiff was wrongfully terminated in violation of the public policy of North Carolina and N.C.G.S. §143-422 et seq., known as the North Carolina Equal Employment Practices Act. Plaintiff contends that he has been subjected to discrimination in the workplace

and has been unlawfully terminated on account of his disability, retaliation and the termination of his employment.

## JURISDICTION

2. The allegations contained in paragraph 1 is hereby re-alleged, re-asserted and incorporated herein by reference.

3. Plaintiff filed a charge of discrimination alleging disparate treatment and discrimination on the basis of disability and retaliation with the Equal Employment Opportunity Commission (hereinafter "EEOC"), designated as EEOC Charge No. 433-2023-03044 on October 30, 2023. The EEOC issued and emailed to Plaintiff a Notice of Right to Sue on November 7, 2023. (Exhibit 1) Plaintiff filed this action on this charge within ninety (90) days of receipt of the Notice of Right to Sue. He has met all jurisdictional requirements and exhausted all administrative remedies prerequisite to Title VII.

4. This Court has concurrent jurisdiction over the federal claims under 42 U.S.C. § 1988, and over all the claims under Chapter 7A of the General Statutes and under the state constitution.

5. This Court has subject matter jurisdiction in this United States District Court pursuant to 28 U.S.C. §1331 (federal question) 28 U.S.C. § 1343(a)(3) and (a)(4) (civil rights violation), and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. Plaintiffs ask the Court to invoke its supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. The unlawful acts complained of occurred in Orange County in the Eastern District of North Carolina, so venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b).

8. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

9. The allegations contained in paragraphs 1-8 are hereby re-alleged, re-asserted and incorporated herein by reference.

10. Plaintiff is a visually impaired, African American male citizen, and resident of Orange County, North Carolina.

11. Defendant Orange County (hereinafter "Defendant" and/or the "County") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Solid Waste Management Fleet Services Division ("Fleet Services"). Employees of Fleet Services are employees and agents of the County, which bears legal responsibility under state law for discriminatory acts, negligent acts and omissions of Fleet Services in the course of their employment. The County is responsible for the appointment, training, supervision, promotion and discipline of its employees and supervisory personnel.

12. Further, on information and belief, the County, at the time of the discriminatory acts, waived governmental or sovereign immunity from any state law tort claims in this case pursuant to G.S. § 153A-435, either by participation in a

3

government risk pool or through purchase of commercial insurance that will indemnify the County and its agents for any judgment against it or its agents named in this action.

13. Defendant is an "employer" for purposes of the Title VII and has more than 15 employees.

## FACTS

14. The allegations contained in paragraphs 1-13 are hereby re-alleged, re-asserted and incorporated herein by reference.

15. Plaintiff was hired with Orange County Fleet Services on June 2018. He was employed as a Master Mechanic.

16. In August of 2020 Plaintiff was working at his residence and a nail struck him in his right eye and caused him to become visually impaired. He is currently considered legally blind.

17. Plaintiff took a hit in his left eye as a child and was determined blind in that eye years ago. He has endured numerous surgeries to try to restore his vision. Plaintiff enjoys some limited vision.

18. In January of 2021 Plaintiff was contacted by the County and asked if he would work and consult from home. He agreed to do so at their request. I consulted for them from January of 2021 until August of 2021.

19. Plaintiff physically returned to work in August of 2021 and was given a promotion as Supervisor. The County also offered him transportation to transport him to and from work.

20. Upon my return to work, he was assigned a new Director - Theo Ledman. Mr. Ledman and Plaintiff worked very well together until his personality would change. He began to yell, scream and throw temper tantrums at work.

21. In December of 2021 Plaintiff was seen by Diane Beasley, O.D., in the Low Vision Rehabilitation Service at Duke Health to examine his vision condition. Despite the report noting that Plaintiff is legally blind, the letter issued by Dr. Beasley made recommendations/modifications that could be implemented for him to work.

22. The vision report noted that Plaintiff is functionally monocular and was recommended to wear shatter-resistant safety glasses, and to be allowed to carry and use magnifiers, telescopic devices and other apps while at work.

23. Plaintiff notified human resources of the behaviors of Mr. Ledman towards him. Plaintiff was aware of instances where Mr. Ledman and his counterparts were stealing from the County. During this time Mr. Ledman was under investigation for other issues as well. Plaintiff notified human resources of these matters and Mr. Ledman was terminated from his employment with the County.

24. In April of 2022 Mr. Robert Williams became the Interim Director. The County Manager gave instructions to Mr. Williams, and stated that he was told not to yell, to stay in the middle of the road and keep Pop (Plaintiff's nickname) happy. Mr. Williams constantly stated that he was "a people person" in a comparative sense to Plaintiff as if there was something wrong with being nice and talking

to everyone. Mr. Williams also stated that he was put on the earth to cause problems.

25. In June of 2022 Plaintiff had to go out to have another surgery because a previous partial corneal transplant had failed and his vision became very cloudy. Plaintiff was out for six weeks and returned July 12, 2022.

26. Upon Plaintiff's return to work, Mr. Williams delegated most of his responsibilities to James "Jamie" Rogers. He stated to Plaintiff that there was not going to be a power struggle and Plaintiff replied, "I didn't know we had one." Plaintiff stated that he just wanted to know how you want to do business and keep the vehicles fixed. Mr. Williams also stated to Plaintiff that "he thought you would have had 20/20 vision upon your return to work."

27. Mr. Williams went in into Plaintiff's assigned office and threw some of my personal items (including wipes & candy) in the trash. The custodian asked him why he was throwing Pop's stuff in the trash can. Mr. Williams mumbled something and proceeded to throw the items in the trash. Custodian Barbara notified her supervisor of this action. Derrick Jones retrieved Plaintiff items from the bin. Plaintiff obtained a written statement from Ms. Barbara Hawksworth. He also spoke with Derrick Jones about this matter in detail. This incident upset Plaintiff so bad that he went next door to talk to Nish Trevidi about it.

28. When the gas crisis occurred, the Sheriff (Chief) phoned the Plaintiff inquiring about what was the situation with the gas card because he had sheriff personnel that were at an event in South Carolina. Mr. Williams comes up and asks

Plaintiff who are you talking to and Plaintiff put his finger up to say give him a minute. Mr. Williams then starts ranting "can you believe this guy?"

29. Once the phone call ended Mr. Willimas asks Plaintiff who were you talking to and he stated the sheriff's department. Plaintiff went on to explain that the chief wanted to know why the gas card was not working. Mr. Williams went on to say that who does the sheriff think can come to the gas pump like everybody else and get gas. Plaintiff stated I am sure he could but he was in Charleston, SC.

30. Ciara Baldwin reported that a lift broke on a bus. Ciara went on to say that they could hand pump it. Plaintiff stated Ciara don't forget where you came from. We all laughed about it. Jamie Rogers informed Mr. Williams about this exchange. Mr. Williams went to Ciara and Ciara stated that Jamie took this out of context. Plaintiff was making reference to Ciara who used to be a driver and when the lifts would break she would have to hand pump the patients. Mr. Williams approached Plaintiff with this after Ciara explained this to him that she knew what he meant from the statement. He asked Plaintiff to apologize to Ciara and he asked for what. He went on to say that he has an Aunt that is a little lady and how people can feel about certain things said. He then said if Plaintiff felt this was a problem we would be headed to HR and Plaintiff said that is where he wants to be.

31. Mr. Williams kept coming to Plaintiff asking him to paint lines on the floor. Plaintiff stated that it was a job for AMS (facility). There were lines down on the

floor marked with tape. Plaintiff stated to Mr. Williams to provide him with some paint. Mr. Williams kept harassing Plaintiff about painting the lines on the floor despite not being part of his job description.

32. On September 8, 2022, Mr. Robert Williams informed Plaintiff that the transportation that had been previously arranged for him would not be offered anymore using a county vehicle. He stated that you cannot use a County vehicle to transport a county employee. Ciara Baldwin contacted another department on September 9, 2022 and this department started picking Plaintiff up on September 12, 2022.

33. Plaintiff previously had a conversation with Ciara Baldwin to clarify if the department were going to shuttle buses or not. An example of this occurs if an employee showed up with a vehicle that needs to be serviced, the department would shuttle the person back to their job and once we completed the work on the vehicle then the department would shuttle the vehicle back to the owner/driver. Mr. Williams stated that we would not do any shuttling of people or vehicles. On September 23, 2022, Plaintiff, Mr. Williams and Jamie Roberts, met to clarify the shuttling issues.

34. When the parties met, Mr. Williams handed Plaintiff a copy of his job description. Plaintiff stated that he did not need a copy of his job description. He stated that from here on out he needed to put what he needed from Plaintiff in writing. Plaintiff wanted this done because Mr. Williams had a tendency to

8

say one thing and do something different what Plaintiff calls "moving the goal post."

35. At the end of the meeting Mr. Williams asked Plaintiff if he understood him and Plaintiff told him that he heard everything he said. Mr. Williams wanted to know why he and Plaintiff were bumping heads and Plaintiff told him that he threw his personal items in the trash when he first met him. He jumped up started hollering and lied that he did not do that. He then stated that we would discuss his job description on Monday.

36. Plaintiff expressed that Mr. Williams harassed him and forced him out of his position due to his disability.

37. On October 20, 2022 Plaintiff learned that another Curve Monitor arrived at the County and yet the County has yet to purchase any items to assist Plaintiff with his vision issues.

38. Later on October 31, 2022, Plaintiff was having a conversation with Ciara Baldwin about not being able to watch the football game. She stated that they have magnifiers that would help. Plaintiff stated that the County has yet to assist him with any items that would help him to do his job better. She stated that she was told they are not going to buy items for Plaintiff that only would benefit him.

39. On November 2, 2022 Plaintiff and Ciara Baldwin were conversing about the magazine that was given to him regarding items that could assist with his limited vision. Ciara stated that she already got Plaintiff a monitor. She stated

9

that a monitor sitting in the middle of the shop floor was for him. Plaintiff questioned this and she then said the monitor is for everyone so that we could have a work station in the garage area.

40. Plaintiff stated that the only item supplied to him was poster board to write on and the magazine was given to him in September because he wrote the date on it. Ciara also stated that she was told that it is not her responsibility to help Plaintiff.

41. On November 16, 2022, Ciara sent an email to Mr. Williams regarding putting the chains up in the work area. A couple of co-workers stated to Mr. Williams, "what about Pop?" Mr. Williams acted as if nothing was said. Ironically the very next day Plaintiff received a write up regarding an idea that never happened two months prior.

42. On November 17, 2022 Plaintiff was written up by Mr. Williams for going to get a vehicle part from his residence in September of 2022.

43. Plaintiff filed a grievance against Mr. Williams after this because he had never been written up before for doing his job and felt Mr. Williams was trying to terminate his employment. Plaintiff never received any type of response regarding the grievance.

44. On November 22, 2022, Plaintiff had a sewage issue at his home. He phoned Jamie Rogers and told him that if he got the issue resolved he would be in on November 23, 2023. Plaintiff did not get the issue resolved so he missed work on November 23, 2022.

45. On November 29, 2022, Plaintiff was notified that his doctor had taken him out of work. He was shocked because there was not a need to take him out of work. There were no prior doctor visits so Plaintiff was trying to figure out how and where did the County get a doctor's note. When the Human Resources Representative Vicki Jones showed up to complete the leave paperwork she asked him who wrote "personal" on the paperwork and he stated he didn't know.

46. Plaintiff then called UNUM, the leave coordinator for the County and asked who took him out of work and signed him up for FMLA. They indicated that his manager called and asked him to put Plaintiff on a medical leave.

47. Later On November 29, 2022 Plaintiff was sent home and put on paid leave due to allegedly being a liability to Orange County.

48. On November 30, 2022 Plaintiff received a call from Cody Anderson stating that Ciara Baldwin was looking for his IPAD.

49. In December of 2022 Vicki Jones in Human Resources phoned the Plaintiff and stated that he should not be working on anything. He stated that his personal items were stolen the last time he was out so that is why he took the IPAD with him home and that under his impression he was still employed by Orange County. Plaintiff asked if they needed the work phone and she said no.

50. Ms. Jones phoned back the same day to state that Plaintiff's evaluation should have been completed by October of 2022. Ms. Jones went over the evaluation

and Plaintiff received a proficient rating overall based on. Plaintiff asked how Mr. Williams could evaluate him when he does not even know him.

51. Plaintiff asked stated how could he be written up for an idea that never went anywhere to being proficient in doing his job duties. Proficient meaning to be competent or skilled in doing or using something.

52. The County hired a new Mechanic who started on December 5, 2022 thus replacing the Plaintiff in his role with the County.

**FIRST CLAIM FOR RELIEF**
**Americans with Disabilities Act of 1990 as amended**
**42 U.S.C. § 12101 et seq**

53. The allegations set forth in Paragraphs 1 through 52 are re-alleged and incorporated by reference as if fully set forth herein.

54. The acts of discrimination based upon Plaintiff's disability complained of herein are actionable under the Americans with Disabilities Act of 1990 as amended. (hereinafter "ADA").

55. Plaintiff suffers from a visual disability and in a class of protected employees. He was performing the essential functions of his job at the time of his termination and constructive discharge.

56. Plaintiff was wrongfully terminated exercising his rights to be employed free from discriminatory conduct from the Defendant in the terms and conditions of his employment.

12

Case 4:24-cv-00019-BO-RJ   Document 1   Filed 02/05/24   Page 12 of 19

57. The evidence shows that Plaintiff was accommodated in his role and did not suffer any job detriments until Mr. Williams became the Director and became his Supervisor.

58. On November 17, 2022 Plaintiff received a Final Written Warning from Mr. Williams from an incident in August of 2022 stemming from Plaintiff obtaining a vehicle part from his personal workshop to use to repair a County EMS vehicle. Plaintiff did not sign the write up and filed an appeal.

59. The appeal was responded to his immediate supervisor Jamie Rogers, who upheld the decision of Mr. Williams.

60. The Plaintiff then filed a Step 2 grievance that was responded to by Human Resources. Human Resources upheld Plaintiff's appeal of the write up due to the fact that the County in the past had allow to purchase and fabricate parts and that no written policy existed at that time to address the alleged violations committed by Plaintiff.

61. During the course of the grievance process Plaintiff alleges that the County received notice from his doctor that he could not work due to his vision issues, and he was placed on an administrative leave without pay from his position.

62. Plaintiff alleges that he was not made aware of his alleged unfitness for duty by any treating physician.

63. Plaintiff has been denied the opportunity to return to work and has been effectively terminated from his employment with the Defendant in violation of the ADA because of his disability. Plaintiff is of the belief that Defendant regards

13

him as someone with a disability due to his ongoing medical issues and failed to provide him with a reasonable and effective accommodation by continuing to place him in a hostile and intimidating environment under the management of Robert Williams. The continued placement and engagement on Mr. Williams' team ultimately led to his termination. This was designed to overwhelm Plaintiff and exacerbate the condition of his disability.

64. Defendant by its agents in their individual and official capacities, violated the ADA by intentionally and with malice terminated his employment based on his disability and for engaging protected activity.

65. Plaintiff seeks relief from this discriminatory conduct in the form of back pay, future wages and for compensatory damages pursuant to 42 U.S.C. § 2000 for injuries he suffered as a result of being wrongfully terminated. Plaintiff is also seeking an award of punitive damages pursuant to his Title VII claims as allowed under law.

66. Plaintiff also seeks reasonable attorney's fees under 42 U.S.C. § 1988.

67. The reason Defendant gave for the decision to terminate him was a pretext for discrimination.

## SECOND CLAIM FOR RELIEF
### Retaliation

68. The allegations set forth in Paragraphs 1 through 66 are re-alleged and incorporated by reference as if fully set forth herein.

14

69. Plaintiff suffers from a visual disability and in a class of protected employees. He was performing the essential functions of his job at the time of his termination and constructive discharge.

70. Plaintiff was wrongfully terminated exercising his rights to be employed free from discriminatory conduct from the Defendant in the terms and conditions of his employment.

71. Plaintiff suffers from a visual disability and in a class of protected employees. He was performing the essential functions of his job at the time of his termination and constructive discharge.

72. Plaintiff filed a grievance against his supervisor/manager Mr. Williams, the Director for the write up given to him in on November 17, 2022.

73. Not long after filing the grievance challenging the write-up from Mr. Williams, the County failed and or refused to continue to accommodate the Plaintiff's visual impairment condition.

74. He was placed on an unpaid administrative leave and has not been able to return to work.

75. In December of 2022, his position was replaced.

76. Plaintiff seeks relief from this discriminatory conduct in the form of back pay, future wages and for compensatory damages pursuant to 42 U.S.C. § 2000 for injuries he suffered as a result of being wrongfully terminated. Plaintiff is also seeking an award of punitive damages pursuant to his Title VII claims as allowed under law.

**77.** Plaintiff also seeks reasonable attorney's fees under 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### (Wrongful Termination in Violation of Public Policy of North Carolina)

78. The allegations set forth in Paragraphs 1 through 76 are re-alleged and incorporated by reference as if fully set forth herein.

79. Plaintiff filed a grievance concerning the final written warning given to him related to his decision to travel to his home to obtain a part to be fabricated for a County EMS vehicle due to the shortage of available vehicles.

80. Plaintiff had been previously allowed to engage in this type of activity without any issues. This changed once he became under the management of Mr. Williams, the Director.

81. Plaintiff previously enjoyed accommodations for his visual impairment since the beginning of his employment until late 2022. Plaintiff was denied a reasonable accommodation in violation of his rights and was terminated due to his disability.

82. Plaintiff's was terminated from his employment in violation of the public policy of the State of North Carolina.

### FOURTH CLAIM FOR RELIEF
### Punitive Damages

83. The allegations set forth in Paragraphs 1 through 81 are re-alleged and incorporated by reference as if fully set forth herein.

84. The Defendant engaged in unlawful discrimination against the Plaintiff that was intentional. The Defendant terminated the Plaintiff for raising concerns of wrongful treatment by his supervisor and due to violations of the ADA.

85. The Defendant discriminated against the Plaintiff with malice or reckless indifference to the Plaintiff's federally protected rights. The Defendant was aware of Plaintiff exercising his rights and terminated his employment, nonetheless, disregarding his rights under federal law.

86. Pursuant to Title VII, 42 U.S.C. § 2000 Plaintiff contends that punitive damages are required to punish Defendant for their wrongful acts and to deter Defendant and others from committing similar wrongful acts.

87. Defendant did act intentionally, maliciously, willfully, wantonly and in reckless disregard to the rights of Plaintiff by aggressively and discriminating against Plaintiff through the specific actions described above.

## FIFTH CAUSE OF ACTION
(Race Discrimination – N.C.G.S. § 143.422 et seq.)
**Equal Employment Practices Act**

88. The allegations set forth in Paragraphs 1 through 86 are re-alleged and incorporated by reference as if fully set forth herein Plaintiff incorporates all prior paragraphs by reference.

89. Plaintiff is a visually impaired male and in a class of protected employees.

89. He has performed her job at a very high level when he was wrongfully terminated for engaging in protected activity by filing a grievance concerning a final written warning by his Director.

90. Defendant determined that Plaintiff was no longer fit for duty and denied him the opportunity to continue to work using an accommodations like in the past. Plaintiff had benefited from workplace accommodations for the bulk of his tenure with the County.

91. Defendant subjected Plaintiff to discriminatory and retaliatory treatment and discipline because of his disability. Defendant replaced Plaintiff's position upon information and belief with another employee that does not require any workplace accommodations.

**JURY DEMAND**

Plaintiff demands that all matters be tried before a jury of his peers.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court as follows:

1. Award compensation for lost wages;

2. Award compensation for future wages;

3. Compensatory damages;

4. Punitive damages;

5. The costs of this action, including reasonable attorney's fees under 42 U.S.C. § 1988;

6. For a trial by jury on all claims so triable; and

7. Any further the relief the Court deems just and necessary.

Respectfully submitted this the 5th day of February 2022.

                        THE MONTGOMERY LAW FIRM, PLLC

BY:    /s/Eric A. Montgomery
         ERIC A. MONTGOMERY, N.C. Bar No. 38951
         *Attorney for Plaintiff Alton Wall Sr.*
         6135 Park South Drive, Suite 510
         Charlotte, North Carolina 28210
         Telephone:   (704) 749-3135
         Facsimile:    (704) 228-7157
         E-mail:       eric@themlawfirm.com